**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*


MAURICE RAGINS, #414056,          *

     Plaintiff,              *

v.                              **Case No.: GJH-15-2471**

                            *

CORRECTIONAL OFFICER
LIEUTENANT DERRICK BURMAN, et al.,

                            *

     Defendants.

                            *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In his Amended Complaint, Plaintiff Maurice Ragins alleges that he was physically assaulted by several correctional officers at the Baltimore City Booking and Intake Center (BCBIC) in violation of the Fourteenth Amendment of the United States Constitution. ECF No. 48. Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 64. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion for Summary Judgment will be denied.

## I.    BACKGROUND[1]

Plaintiff Maurice Ragins is incarcerated at the Maryland Correctional Institute in Hagerstown, Maryland (MCI-H). ECF No. 64-6. According to Plaintiff, on May 14, 2014, while he was being held at BCBIC to be rebooked on a 2012 charge, Defendants physically assaulted him including by stomping, kicking, elbowing, and punching him. ECF No. 63-3 at 2; ECF No. 64-4 at 1; ECF No. 64-7 at 1.

---

[1] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.

At 7:33 a.m., Plaintiff was sitting on a table in 4 North B-Dorm while other inmates were locked in their cells. *See* ECF No. 65, ENC 17 at 7:33:37.[2] A female officer approached Plaintiff as he was sitting on the table. *Id.*, ENC 17 at 7:36:43. They spoke for a short period of time and then she walked away. *Id.*, ENC 17 at 7:37:43. Plaintiff continued to sit on the table and then after getting up, approached two female officers. *Id.*, ENC 17 at 7:38:30. After a short conversation, Plaintiff returned to the table where he had been previously sitting. *Id.*, ENC 17 at 7:38:40. A short time later, three officers arrived and approached the table where Plaintiff was sitting. *Id.*, ENC 17 at 7:40. After a brief conversation, the three officers left the area. *Id.*, ENC 17 at 7:40:36. Plaintiff walked towards the officers' desk and waited at the vestibule door. *Id.*, ENC 17 and ENC 08 at 7:46:47. Multiple officers then escorted Plaintiff to his cell. *Id.*, ENC 17 and ENC 08 at 7:48:29. After Plaintiff entered his cell, the officers started walking away but then returned. *Id.*, ENC 17 at 7:48:49. The cell door opened and Plaintiff's cellmate exited the cell. *Id.*, ENC 17 at 7:50:59. An officer appears to be motioning for Plaintiff to exit the cell. *Id.* Officers then entered the cell. *Id.*

There is no footage of the approximately two minutes that officers spent in Plaintiff's cell. Plaintiff says that Defendants assaulted him during this time. ECF No. 64-4 at 1; ECF No. 64-7 at 1.

Eventually Plaintiff exited the cell in handcuffs and was led away by an officer. ECF No. 65, ENC 17 at 7:52:53. He was taken immediately to the medical unit. *Id.*, ENC 10 at 7:55:38. He had an abrasion to his left ear. ECF No. 64-4. Plaintiff's "wound" was "cleaned and bacitracin [was] applied." *Id.*

---

[2] ECF No. 65 is BCBIC's multi-camera security footage. The "ENC" number is a pincite to a particular camera.

The next day, Plaintiff returned to MCI-H where he was again provided medical attention for his ear laceration and for other injuries. ECF No. 64-7 ("abrasions noted on bilateral elbow, no drainage noted; 1 laceration noted on inner left ear lobe, no drainage; 1 abrasion noted on left lobe; hematoma around left ear; 1 abrasion noted on left [] front head above left eyebrow; left suborbital hematoma noted; patient denied discomfort at this time").

Plaintiff received a Notice of Infraction for the May 8, 2014 BCBIC incident, which claimed Plaintiff had "threatened to assault his cell buddy." ECF No. 64-8 at 4. A hearing was held on May 13, 2014. *Id.* at 3. The hearing officer found that the infraction notice lacked factual details, was conclusory, and not credible. *Id.* at 4. Thus, the hearing officer found Plaintiff not guilty. *Id.*

## II.     STANDARDS OF REVIEW

Defendants style their motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the facts in the complaint or "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, Rule 12(d) requires courts to treat a motion to dismiss as a motion for summary judgment when the court considers matter outside the pleadings. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Consistent with this rule, the nonmoving party must have some indication that the court will treat the motion to dismiss as a motion for summary judgment and "must be afforded a reasonable opportunity for discovery" if it is essential to the nonmoving party's ability to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

It is obvious that when the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," and the nonmoving party attaches exhibits to its opposition, the nonmoving party is aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.2d 253, 260–61 (4th Cir.1998). That is the situation here. Defendants' style their motion as a Motion to Dismiss or Motion for Summary Judgment and in opposing Defendants' Motion, Plaintiff relies on evidence outside the pleadings and treats Defendants' motion as one for summary judgment. Under these circumstances, the Court will construe Defendants' motion as a Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party bears the burden of demonstrating that a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## III.   DISCUSSION

The Eighth Amendment of the United States Constitution forbids punishment that involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The substantive due process clause of the Fourteenth Amendment prohibits punishment of pretrial detainees based on essentially the same principles as those applied under the Eighth Amendment to post-conviction detainees. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979); *Riley v. Dorton,* 115 F. 3d 1159, 1166–67 (4th Cir. 1997), *abrogated on other grounds*, *Wilkins v. Gaddy,* 559 U.S. 34 (2010). Plaintiff was a pretrial detainee at the time of the alleged assault because he had been transferred temporarily from MCI-H to BCBIC to be processed on an open criminal charge. Therefore, Plaintiff's claims are measured by the substantive due process clause of the Fourteenth Amendment.

Courts determine whether force used by prison officials is excessive, in violation of the Constitution, by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). A court must look at "the need for application of force," "the relationship between that need and the amount of force used," "the extent of the injury inflicted," "the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials," and "any efforts made to temper the severity of the response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The extent of the injury incurred is one factor indicating whether the force used was necessary in a particular situation but if force was applied maliciously and sadistically, liability is not avoided simply because the prisoner had the "good fortune to escape without serious injury." *Id.* at 36–38.

Here, the record reflects a fundamental disagreement between the parties about whether the force used by Defendants was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. First, it is not clear from the record that the situation called for an "effort to maintain or restore discipline" given that Plaintiff was cleared by a hearing officer of any wrongdoing. ECF No.64-8 at 4. Although Defendants insist that video evidence demonstrates that Plaintiff repeatedly refused to enter his cell, had an issue with his cellmate, and was then ordered to exit his cell but refused to comply, ECF No. 64-1 at 10, the video neither provides conclusive evidence supporting or contradicting either Defendants' or Plaintiff's description of the incident. *See* ECF No. 65. Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the video of Plaintiff being escorted into his cell without force suggests that Plaintiff complied with Defendants' request that he enter his cell. *Id.*, ENC 17 and ENC 08 at 7:47:17. Further, the video shows Plaintiff's cellmate exiting the cell, but viewing the facts in Plaintiff's favor, the Court cannot assume that the cellmate's exit occurred because of an issue with Plaintiff. *Id.*, ENC 17 at 7:50:59. In any case, Plaintiff disputes that there was an issue with his cellmate, and the hearing officer tasked with determining whether Plaintiff violated any rules found the Notice of Infraction stating that Plaintiff "threatened to assault his cell buddy" was conclusory and not credible. ECF No. 64-8.

As for the portions of Plaintiff's interactions with Defendants that occurred off camera, Defendants' claim that the "incident was an entirely unnecessary situation created by Plaintiff" but do not explain why the Court should disregard Plaintiff's evidence to the contrary. ECF No. 72 at 2. Defendants point to statements made by correctional officers about the incident to support their narrative, ECF No. 72-2, but Plaintiff describes a different set of facts, which he

supports with record evidence, ECF No. 64-3, 64-4, 64-7, 64-8. Thus, genuine disputes of material fact remain about whether a need for Defendants' use of force existed.

Even assuming Plaintiff's cellmate's exit is evidence of a disciplinary issue, disputed facts remain about the relationship between any need for application of force and the amount of force used. After all, viewing the facts in Plaintiff's favor, once the cellmate exited, no threat to safety remained that would justify the extent of Defendants' alleged assault. Similarly, even to the extent that Plaintiff refused to follow Defendants' order to exit the cell, justifying some use of force to maintain or restore discipline, the use of force described by Plaintiff—stomping, kicking, and punching—creates at least a disputed fact about efforts made to temper the severity of the response.

Defendants' argument that they are entitled to summary judgment because video evidence does not demonstrate that Plaintiff was significantly injured fails. First, "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. Further, the extent of Plaintiff's injuries cannot conclusively be established by the footage of Plaintiff walking out of his cell. Common sense suggests that Defendants may still have maliciously stomped, kicked, and punched Plaintiff even if Plaintiff was able to walk out of his cell after the alleged assault without immediately looking as if he had been attacked. Further, Plaintiff's medical records confirm that he did sustain injuries. ECF No. 64-4; ECF No. 64-7.

Ultimately, the security footage from before and after the alleged assault does not resolve contradictions between Plaintiff and Defendants' descriptions of the incident, which both find support in record evidence. Therefore, multiple genuine disputes of material fact remain, many

of which cannot be resolved without an assessment of Plaintiff and Defendants' credibility as witnesses.

Defendants also move for summary judgment, arguing that they are entitled to qualified immunity. However, Defendants' assertion of qualified immunity does not currently provide a basis for summary judgment. Qualified immunity affords a government official protection from suits for monetary damages when the official has acted in good faith. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This brand of immunity applies to "gray areas, where the law is unsettled or murky," rather than situations where the government actors were "plainly incompetent or . . . knowingly violate[d] the law." *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013) (quoting *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir.2001)).

In ruling on a defense of qualified immunity, a court must (1) identify "the specific right allegedly violated," (2) determine "whether at the time of the alleged violation the right was clearly established," and (3) if so, then decide "whether a reasonable person in the officer's position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). The first two criteria are pure questions of law to be resolved by the court. *See id.* The third criterion, which requires an evaluation of the objective reasonableness of the conduct in question, may necessitate the resolution of disputed factual issues surrounding the conduct. *See id.* For example, "[i]n instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version of events he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved" without weighing the evidence at trial. *See DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir. 1995). This case presents that situation.

It is a clearly established constitutional right that a pretrial detainee not be subjected to willful, wanton and outrageous punishment in the form of being kicked, stomped on, and punched. *See Sawyer v. Asbury*, 537 F. App'x 283, 288 (4th Cir. 2013); *Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 669 (D. Md. 2003), *aff'd sub nom. Simms v. Bruce*, 104 F. App'x 853 (4th Cir. 2004). And, as described above, Plaintiff supports his allegation that Defendants stomped, kicked, and punched him with record evidence. To credit only Defendants' alternative version of events—good-faith use of force to maintain or restore discipline—would be to disregard Plaintiff's evidence to the contrary. But at the summary judgment stage, the Court must view the facts in the light most favorable to the non-moving party. As such, the Court cannot yet conclude that Defendants are entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion, construed as a Motion for Summary Judgment, is denied. A separate Order shall issue.


Date: <u>April    16, 2019</u>                                    /s/<u>                           </u>
                                                                  GEORGE J. HAZEL
                                                                  United States District Judge